IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Steve Booker, | ) | C/A No.: 1:13-2033-TMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a
Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a)
(D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to
obtain judicial review of the final decision of the Commissioner of Social Security
("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and
Supplemental Security Income ("SSI"). The two issues before the court are whether the
Commissioner's findings of fact are supported by substantial evidence and whether she
applied the proper legal standards. For the reasons that follow, the undersigned
recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

       A.      Procedural History

       On March 16, 2010, Plaintiff filed applications for DIB and SSI in which he
alleged his disability began on December 19, 2008. Tr. at 92, 93, 122–23. His
applications were denied initially and upon reconsideration. Tr. at 97–101, 104–106,

111–113.  On August 12, 2011, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Gregory Wilson.  Tr. at 68–91 (Hr'g Tr.).  The ALJ issued an unfavorable decision on October 7, 2011, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 13–27.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1–4.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on July 24, 2013.  [Entry #1].

B.     Plaintiff's Background and Medical History

1.     Background

Plaintiff was 43 years old at the time of the hearing.  Tr. at 72.  He completed the eleventh grade.  *Id.*  His past relevant work ("PRW") was as a janitor and a kitchen helper.  Tr. at 87.  He alleges he has been unable to work since December 19, 2008.  Tr. at 122.

2.     Medical History

Plaintiff presented to Lary R. Korn, D.O., on May 5, 2010, for a consultative examination.  Tr. at 226–29.  Dr. Korn noted that Plaintiff had severe morbid obesity and that his station and gait were consistent with his body habitus and his stance was widened.  Tr. at 227.  His lungs were clear, and no rhonchi or wheeze were heard.  *Id.*  He had full motion and strength of his upper extremities.  *Id.*  He had no crepitus in his knees.  *Id.*  Plaintiff was unable to perform a full squat, heel-toe walk, or tandem walk.  Tr. at 227–28.  Dr. Korn observed 4+ millimeter pitting pretibial edema and some stasis skin changes.  Tr. at 228.  Plaintiff's reflexes were absent at the patellae and left Achilles.

*Id.* Plaintiff's flexion was decreased, but he had negative straight-leg raise. *Id.* Dr. Korn indicated diagnoses including severe morbid obesity; exertional dyspnea and orthopnea, uncertain etiology cannot rule out cardiac pathology; venous insufficiency; mechanical low back pain complicated by severe truncal obesity, cannot rule out significant spondylosis. *Id.* Dr. Korn recommended additional testing, and indicated the following limitations: no prolonged bending, leaning, and stooping; no ambulation over uneven terrain; no climbing ladders or scaffolds; no significant stair climbing. He also stated, "I am of the opinion that he is very limited in what he can do in terms of general physical exertion." *Id.*

Plaintiff was referred for x-rays on May 5, 2010. Tr. at 224–225. Chest x-ray revealed no abnormalities. Tr. at 224. X-ray of the lumbar spine indicated degenerative disc disease at the L4-5 level; possible early degenerative disc disease at the L5-S1 level; and loss of the lordotic curvature. Tr. at 225.

On June 1, 2010, state agency consultant Maria M. Legarda, M.D., completed a physical residual functional capacity assessment. Tr. at 232–36. She indicated that Plaintiff could occasionally lift and/or carry 10 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of at least two hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; push and/or pull unlimited, other than shown for lift and/or carry; never climb ladder/rope/scaffolds; occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl; and should avoid walking on uneven terrain or working at heights. *Id.*

Plaintiff underwent pulmonary function testing on September 27, 2010.  Tr. at 239.  Prior to the test, his height and weight were obtained.  *Id.*  He was determined to be 68 inches tall and 442.4 pounds.  *Id.*  Plaintiff put forth good effort during the test.  *Id.* The test was reviewed by Carmen Fratto, M.D., who determined that Plaintiff's pulmonary impairment was non-severe and that he had normal FEV1 and FVC results. Tr. at 241.

On November 8, 2010, state agency consultant Barbara Cochran, M.D., completed a physical residual functional capacity assessment.  Tr. at 242–49.  She indicated that Plaintiff was limited as follows: occasionally lift and/or carry 10 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of at least two hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; push and/or pull unlimited, other than as shown for lift and/or carry; never climb ladder/rope/scaffolds; occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl; avoid even moderate exposure to extreme heat; avoid concentrated exposure to humidity;  avoid all exposure to hazards; avoid walking on uneven terrain; and avoid working at heights.  *Id.*

Plaintiff presented to the emergency department at Mary Black Healthcare on March 29, 2011, complaining of generalized weakness.  Tr. at 257.  He was diagnosed with acute hyperglycemia and new onset diabetes mellitus.  Tr. at 259.

On April 11, 2011, Plaintiff presented to the emergency department at Mary Black Healthcare complaining of mild diarrhea with occasional bloody streaks.  Tr. at 251–56. He indicated that his symptoms began after he started taking Metformin.  Tr. at 251.

4

Plaintiff's glucose was noted to be 145. Tr. at 253. He was instructed to decrease Metformin to once a day and he was prescribed Glipizide and Lisinopril. Tr. at 254. He was also told to follow up with a primary care physician. Tr. at 253.

On May 20, 2011, Plaintiff presented to Judy Thomas, NP, to establish primary care treatment. Tr. at 262–63. Plaintiff's blood pressure was noted to be 145/92 and his weight was 400 pounds. Tr. at 262. Notes from this visit indicate that Plaintiff had intentionally lost 60 pounds since March 2011. *Id.* Plaintiff complained of lower leg edema; shortness of breath when walking; chronic back pain; numbness and tingling in his toes and legs; polyuria; polydipsia; and occasional yeast infections. *Id.* Ms. Thomas observed edema and morbid obesity. Tr. at 263. She prescribed Metformin, Glipizide, Lisinopril/HCTZ, and Lasix. *Id.*

Plaintiff followed up with Ms. Thomas for review of his lab work on June 13, 2011. Tr.at 274. Plaintiff's blood pressure was elevated at 161/91 and Ms. Thomas observed 1+ pitting edema in Plaintiff's feet and lower extremities. Tr. at 274–75. Ms. Thomas also indicated that Plaintiff's diabetes was uncontrolled. Tr. at 275. She increased his Glucotrol dosage and prescribed Byetta and Metoprolol. *Id.*

On June 22, 2011, Plaintiff was seen by Louis L. Martin, OD, for diabetic eye examination. Tr. at 273. His vision was noted to be normal and he had no indication of diabetic retinopathy. *Id.* Plaintiff was diagnosed with presbyopia. *Id.*

Ms. Thomas referred Plaintiff to PharmD Cardiovascular Risk Reduction Clinic, where he was examined on July 11, 2011. Tr. at 271–72. Plaintiff was prescribed Simvastatin and instructed to take his other medications as prescribed. Tr. at 272.

On August 10, 2011, Plaintiff visited the PharmD Cardiovascular Risk Reduction Clinic. Tr. at 343. He indicated that he was walking for two hours on two days per week. *Id.* Plaintiff was encouraged to increase the frequency of his exercise, but not to walk as long each time. Tr. at 344.

Plaintiff was seen in the PharmD Cardiovascular Risk Reduction Clinic on September 19, 2011. Tr. at 340. He indicated that he was doing well and taking his medications as directed. *Id.* His hemoglobin A1C, blood pressure, and lipids were improved. Tr. at 341.

Plaintiff followed up with Ms. Thomas on October 31, 2011, and reported that he had recently started a diet and was continuing to exercise. Tr. at 337. Ms. Thomas indicated that Plaintiff was not eating a realistic diet and told him to incorporate more protein and calories. Tr. at 338.

On November 3, 2011, Plaintiff presented to Walter D. Kucaba, M.D., to establish treatment. Tr. at 319. He complained of fatigue, weakness, malaise, sleep disorder, insomnia, lightheadedness, shortness of breath with exertion, difficulty breathing while lying down, weight gain, wheezing, joint pain, stiffness, and muscle aches. Tr. at 320. Dr. Kucaba observed mild respiratory distress and moderate pain/distress. Tr. at 321. He also observed swelling in Plaintiff's lower extremities with some venous stasis changes beginning and mild pitting edema. *Id.* Dr. Kucaba recommended diet and exercise and referred Plaintiff for multiple tests. Tr. at 321–22.

Plaintiff presented to Dr. Kucaba on November 17, 2011, complaining of worsening right lower extremity pain. Tr. at 314. Dr. Kucaba noted mild respiratory

distress and moderate pain/distress. Tr. at 315. Positive Homan's sign was noted in Plaintiff's right lower extremity. *Id.* Venous stasis changes were indicated in his lower extremities. *Id.* Venous Doppler ultrasound indicated no defined thrombosis. Tr. at 317.

On November 23, 2011, Plaintiff presented to Dr. Kucaba to have paperwork completed with respect to his disability claim. Tr. at 310–13. Plaintiff complained of worsening problems with low back pain, bilateral knee pain, diabetes, and beginning congestive heart failure. Tr. at 310. Dr. Kucaba noted that Plaintiff had diffuse lower extremity edema and that he ambulated with difficulty. Tr. at 311. Dr. Kucaba also noted venous insufficiency. *Id.* Dr. Kucaba indicated that Plaintiff's chronic bilateral leg and knee pain was due to his excessive weight. *Id.* He advised Plaintiff to exercise, to wrap his legs with Ace wrap, and to keep his legs elevated when sitting. *Id.* Dr. Kucaba indicated that Plaintiff could not sit or stand for long periods of time and that he had worsening afternoon somnolence due to sleep apnea. Tr. at 312. Dr. Kucaba completed a physical questionnaire in which he indicated the following limitations: patient's experience of pain or other symptoms frequently severe enough to interfere with attention and concentration needed to perform even simple work tasks; walk less than one city block without rest or severe pain; sit for one hour at a time; stand for 15 minutes at one time; sit less than two hours out of an eight-hour workday; stand/walk less than two hours out of an eight-hour workday; frequently lift less than 10 pounds; occasionally lift 10 pounds; rarely lift 20 pounds; never lift 50 pounds; never climb ladders; rarely stoop (bend), crouch/squat, and climb stairs; frequently twist; and estimated to be absent from work more than four days per month as a result of the impairments or treatment. Tr. at

347–48.  He also indicated that Plaintiff had "good" and "bad" days; that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations; and that Plaintiff had psychological factors affecting his physical condition.  Tr. at 348.  Dr. Kucaba indicated that patient had severe morbid obesity, causing venous insufficiency and chronic lower extremity pain.  *Id.*  He also noted that Plaintiff had cardiac deconditioning and sleep apnea.  *Id.*

Plaintiff saw Ms. Thomas on December 14, 2011, and indicated that he was sticking with a low calorie diet and walking a lot more.  Tr. at 334.

Plaintiff underwent transthoracic echocardiography on April 11, 2012, which indicated normal left and right ventricle structure and function; ejection fraction of 65 percent; and no ventricular septal defect.  Tr. at 307–09.

Plaintiff followed up for diabetes and hypertension on April 13, 2012.  Tr. at 332–33.  He was prescribed Gabapentin for diabetic neuropathy and Lasix was increased for peripheral edema.  Tr. at 333.

On April 13, 2012, Plaintiff's pulse oximetry was evaluated.  Tr. at 306.  He was determined not to qualify for nocturnal oxygen.  *Id.*

Plaintiff was seen in follow up at St. Luke's Free Medical Clinic on July 9, 2012.  Tr. at 329.  He had edema of both feet.  *Id.*  He was encouraged to pursue weight loss and to elevate his feet when at rest.  *Id.*

Plaintiff visited St. Luke's Free Medical Clinic on August 6, 2012, for follow up on diabetes and hypertension.  Tr. at 328.  He described one episode of blurred vision and tingling in his bilateral hands.  *Id.*  He indicated that his blood sugar was over 200 at the

time. *Id.* He was observed to have 1+ edema in his lower limbs. *Id.* He was referred for a diabetic eye examination and encouraged to lose weight. *Id.*

Plaintiff followed up with Dr. Kucaba on August 21, 2012. Tr. at 303–04. He complained of increased obesity, worsening paresthesias to his distal extremities, worsening numbness and tingling in his feet, and worsening paresthesia and dysesthesia to his right arm and hand. Tr. at 303. X-ray of Plaintiff's spine indicated no acute injury. Tr. at 301. He was diagnosed with neck sprain and strain, paresthesia, obesity, and diabetes. Tr. at 304. Dr. Kucaba indicated that "[p]atient needs to go on disability." *Id.*

Dr. Kucaba wrote a letter on August 24, 2012, in which he indicated that Plaintiff had severe morbid obesity; that he was developing lower extremity paresthesias due to his history of diabetes; that he had physical exam findings for developing vascular insufficiency to his lower extremities; that he had increased risk for cardiac problems; that his diabetes was starting to affect his vision; that he had a history of prior worsening back pain; and that he would have significant issues with trying to work. Tr. at 325.

Plaintiff presented to St. Luke's Free Medical Clinic for a regular visit on September 7, 2012. Tr. at 292. He complained of bilateral arm pain that was affecting his range of motion. *Id.*

Plaintiff presented to Dr. Kucaba, on September 27, 2012, with complaints of sinus congestion and drainage and paresthesia. Tr. at 299. He was prescribed an antibiotic. Tr. at 300. Dr. Kucaba wrote a letter in which he indicated that Plaintiff had morbid obesity; that he was developing lower extremity paresthesia; that he was developing vascular insufficiency to his lower extremities; that he was at increased risk

for future cardiac problems; that his diabetes was starting to affect his vision; that he would be a good candidate for weight loss surgery; that he had a history of worsening back pain; and that he needed a lumbar MRI to assess for possible lumbar spinal disease. Tr. at 296.  In addition, Dr. Kucaba wrote "[t]his patient will have significant issues as far as trying to work at this time" and "[t]his patient is disabled." *Id.*

On October 5, 2012, Plaintiff followed up with St. Luke's Free Medical Clinic for diabetes and hypertension.  Tr. at 291.  He complained of leg pain.  *Id.*  Slight ankle edema and diabetic neuropathy were noted.  *Id.*

Diabetic eye examination on October 19, 2012, revealed hyperopia, presbyopia, and mild senile nuclear cataract, but did not indicate diabetic retinopathy.  Tr. at 293.

On January 25, 2013, Dr. Kucaba wrote another letter in which he indicated that Plaintiff had multiple comorbid medical problems; that his shortness of breath was worsening due to morbid obesity; that he had problems with lower extremity swelling and edema that made it difficult for him to walk; that he had a history of diabetes; that he needed gastric bypass; and that he had decreased life expectancy.  Tr. at 289.

Plaintiff presented to Mary Black Healthcare on February 24, 2013, where he was diagnosed with bursitis, muscle spasms, and a sprain.  Tr.at 281–84.

C.    The Administrative Proceedings

    1.    The Administrative Hearing

        a.    Plaintiff's Testimony

At the hearing on August 12, 2011, Plaintiff testified that he attended school until the eleventh grade and that he never obtained a GED.  Tr. at 72.  Plaintiff indicated that

he was right handed.  *Id.*  He testified that he was capable of reading, writing, adding, subtracting, multiplying, and dividing.  *Id.*

Plaintiff testified that he last worked on December 8, 2008.  Tr. at 73.  He testified that he collected unemployment compensation for approximately two years after he was laid off from his last job and that he indicated on the application for unemployment benefits that he could perform "light duty."  Tr. at 73–74.

Plaintiff's attorney asked him if he was having problems when he was working.  Tr. at 75.  Plaintiff indicated that he was having problems with breathing, with walking, with his leg, and with his back.  *Id.*  Plaintiff indicated that his leg was burning, swelling, and hurting.  *Id.*  Plaintiff indicated that his leg pain had worsened since he was diagnosed with diabetes.  *Id.*

Plaintiff testified that he could prepare meals for himself, but that his daughter did the cleaning.  Tr. at 75–76.  Plaintiff indicated that he had difficulty sitting and standing.  Tr. at 76.  Plaintiff testified that he could stand for 10 to 20 minutes at a time.  *Id.*  He indicated that he elevated his feet when sitting.  *Id.*  Plaintiff testified that he had difficulty driving, bending, squatting, and climbing stairs.  Tr. at 77–78.

Plaintiff testified that the medication he took for diabetes made him drowsy and dizzy.  Tr. at 78.  He indicated that he had poor circulation in his legs.  Tr. at 79.

Plaintiff testified that his height was five feet, seven inches and that he weighed 385 pounds, but had weighed up to 450 pounds.  Tr. at 79–80.

Plaintiff testified that he could occasionally lift 10 pounds.  Tr. at 80.

b.     Vocational Expert Testimony

Vocational Expert ("VE") Carey A. Washington, Ph.D., reviewed the record and testified at the hearing. Tr. at 84–89. The VE categorized Plaintiff's PRW as a janitor as heavy and unskilled with a DOT number of 381.687-014 and as a kitchen helper as medium and unskilled with a DOT number of 318.687-010. Tr. at 87. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could lift 20 pounds occasionally and 10 pounds frequently; could stand two of eight hours; could walk two of eight hours on even terrain; could never climb ladders, ropes, or scaffolds; could occasionally climb, balance, stoop, kneel, crouch, and crawl; must avoid hazards; should avoid concentrated exposure to temperature extremes and humidity. Tr. at 87–88. The VE testified that the hypothetical individual could not perform Plaintiff's past relevant work. Tr. at 88. The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform. *Id.* The VE identified jobs including weight tester, DOT number 539.485-010, which was sedentary and unskilled with 4,000–5,000 jobs in South Carolina and 175,000–200,000 jobs in the national economy; surveillance systems monitor, DOT number 379.367-010, which was sedentary and unskilled with 2,000–3,000 jobs in South Carolina and 125,000–150,000 jobs in the national economy; and addresser, DOT number 209.587-010, which was sedentary and unskilled with 2,000–3,000 jobs in South Carolina and 100,000–125,000 jobs in the national economy. Tr. at 88–89. The VE indicated that his testimony was consistent with the DOT. Tr. at 89. The ALJ posed a second hypothetical with the same restrictions as the first hypothetical, but he added an additional limitation to include a

need to periodically elevate the legs parallel to the ground.  *Id.*  The ALJ asked the VE if the additional restriction would affect his response.  *Id.*  The VE testified that the additional restriction would preclude the jobs mentioned and any other substantial gainful work activity.  *Id.*

Plaintiff's attorney declined to question the VE.  *Id.*

### 2.    The ALJ's Findings

In his decision dated October 7, 2011, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
2. The claimant has not engaged in substantial gainful activity since December 19, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, diabetes mellitus, dyspnea on exertion, and venous insufficiency with peripheral edema (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5. After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to sit for 6 hours in an 8 hour day, and stand and walk for 2 hours in an 8 hour day on even terrain only.  The claimant has the ability to lift and carry up to 10 pounds both occasionally and frequently.  He should not climb ropes, ladders, or scaffolds, although can climb, balance, stoop, kneel, crouch, and crawl occasionally.  The claimant should avoid concentrated exposure to temperature extremes and humidity.  He should avoid all exposure to hazards.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
7. The claimant was born on April 21, 1968, and was 40 years old, which is defined as a younger individual age 18–44, on the alleged onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 19, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 18–27.

D.    Appeals Council Review

Plaintiff filed a request for review of hearing decision/order with the Appeals Council dated November 8, 2011.  Tr. at 12.  On May 25, 2013, the Appeals Council issued a notice indicating that it denied Plaintiff's request for review.  Tr. at 1–4.  The Appeals Council indicated the following:

In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.  We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence of record.

We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

We also looked at the medical evidence from Mary Black Healthcare from February 2012 to February 2013, the medical note from Dr. Kucaba from January 25, 2012, the medical evidence from St. Luke's from September 2012 to October 2012, the medical evidence from Family Physicians at 290 from November 2011 to August 2012, and the physical questionnaire from R. Kucaba from November 2011.  The Administrative Law Judge decided your case through December 31, 2011, the date you were last insured for

disability benefits.  This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

With your request for review, you alleged that the Administrative Law Judge was "improperly biased against the fact that the Claimant was laid off from his previous job and received unemployment benefits . . . ."  The Appeals Council considered your allegation[s] solely as they relate to your case under the abuse of discretion standard in 20 C. F.R. § [4]04.970 and 416.1470.    After reviewing the entire record, including the hearing recording, the Appeals Council has determined that there was no abuse of discretion and that no other basis exists to grant review in this case.

Tr. at 2.

## II.    Discussion

Plaintiff alleges the Commissioner erred because the Appeals Council failed to weigh new and material evidence that might have affected the Commissioner's final decision.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

### A.    Legal Framework

#### 1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the

Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational.  *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

Plaintiff argues that new and material evidence submitted to the Appeals Council was sufficiently material and that it may have affected the Commissioner's final decision if considered by the ALJ.  [Entry #13 at 17].  Plaintiff argues that the Fourth Circuit's opinion in *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), is directly on point.  *Id.*

The Commissioner argues that the Appeals Council considered the evidence and properly concluded that it did not pertain to the period on or before the date of the ALJ's decision.  [Entry #14 at 5–6].

"If 'dissatisfied' with an ALJ decision as to entitlement to disability benefits, a claimant 'may request' that the Appeals Council review 'that action.'"  *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011) citing 20 C.F.R. § 404.967.  The Appeals Council will grant the request for review if there is an apparent abuse of discretion by the ALJ; if there is an error of law; if the ALJ's action, findings, or conclusions were not supported by substantial evidence; or if the case concerns a broad policy or procedural issue that may affect the general public interest.  20 C.F.R. § 404.970.

"The regulations also specifically permit claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council."  *Meyer*, 662 F.3d at 705.  "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 404.970(b).  "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'"  *Meyer*, 662 F.3d at 705 citing *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).  If the new and material evidence relates to the period on or before the date of the ALJ's hearing decision, the Appeals Council should evaluate it as part of the entire record.  20 C.F.R. § 970(b).

The Fourth Circuit's decision in *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340–41 (4th Cir. 2012) suggests that evidence created after the ALJ's decision may be considered as new and material evidence and given retrospective consideration under certain circumstances. While *Bird* specifically addressed whether evidence created after a claimant's date last insured could be considered to prove disability arising before the date last insured, it follows that the same logic could be applied to a case in which evidence arises after the date of an ALJ's decision, but before the Appeals Council makes a decision to grant or deny review. However, retrospective consideration should not be given to the new evidence where there is no support for the existence of impairments or the severity alleged prior to the date of the ALJ's decision. *See Johnson*, 434 F.3d at 655–56.

If the Appeals Council finds that the ALJ's "action, findings, or conclusion is contrary to the weight" of all evidence, including the new and material evidence, the Appeals Council will grant the request for review and either issue its own decision on the merits or remand the case to the ALJ. *Meyer*, 662 F.3d at 705 citing 20 C.F.R. § 404.970(b). However, if after considering all evidence, the Appeals Council decides that the ALJ's actions, findings, and conclusions were not contrary to the weight of the evidence, the Appeals Council can deny review with or without explaining its rationale. *Meyer*, 662 F.3d at 705–06.

Here, the Appeals Council denied the request for review. Tr. at 1. While the Appeals Council was not required to explain its rationale, the notice denying review indicated what was considered. Tr. at 2. The Appeals Council specifically found that the

new evidence did not provide a basis for changing the ALJ's decision. *Id.* The notice also stated that evidence from Mary Black Healthcare from February 2012 to February 2013; Dr. Kucaba's note dated January 25, 2012; the medical evidence from September 2012 to October 2012 from St. Luke's; the medical evidence from Family Physicians at 290 from November 2011 to August 2012; and the physical questionnaire from Dr. Kucaba from November 2011 were considered, but were "about a later time," and did not affect the decision about whether Plaintiff was disabled before his date last insured. *Id.*

Plaintiff correctly points out that the Appeals Council erroneously stated that the evidence did not affect the decision about whether Plaintiff was disabled "at the time that he was last insured for disability benefits," when it should have instead stated "through the date of the ALJ's decision." [Entry #15 at 3]. However, the undersigned recommends a finding that this error was harmless in that it was not material to the Commissioner's final decision. It logically follows that if the Appeals Council determined that the cited evidence did not affect the decision about whether Plaintiff was disabled before the date last insured of December 31, 2011, it also found that the evidence did not affect the decision about whether Plaintiff was disabled on or before October 7, 2011.

Plaintiff argues that the additional evidence submitted to the Appeals Council provided more evidence to support the existence of Plaintiff's impairments and limitations and that there is "real likelihood that the new evidence . . . might have affected the fact-finder's decision." [Entry #13 at 17]. The Commissioner argues that evidence of Plaintiff's impairments after the date of the ALJ's decision is only relevant

"to the extent that it sheds light on whether Plaintiff was disabled on or before that date."
[Entry #14 at 6–7].

After careful consideration of the record, the undersigned recommends a finding that the medical evidence dated on and after November 17, 2011, is not both new and material in that it does not concern the time period before the ALJ's decision. Based on the rationale set forth in *Bird*, the undersigned has reviewed and considered the evidence dated after the date of the ALJ's decision. However, *Johnson* makes it clear that retrospective consideration should not be given to new evidence where there is no support for the existence of impairments or the severity alleged prior to the date of the ALJ's decision. Plaintiff submitted treatment notes and opinions for the period from August 10, 2011, to February 24, 2013. While all of this evidence is "new," not all of it is "material." Plaintiff submitted to the Appeals Council two treatment notes from August 10, 2011, and September 19, 2011. Tr. at 340–41, 343–44. Because this evidence concerns the time period before the ALJ's decision, it is both new and material. As for the treatment notes and opinions after October 7, 2011, they are only "material" to the extent that they address Plaintiff's impairments and limitations before October 7, 2011. The undersigned finds the October 31, 2011, note from Ms. Thomas and the November 3, 2011, note from Dr. Kucaba to be new and material because they suggest no new impairments or increased severity of Plaintiff's existing impairments. However, the records after this date indicate worsening symptoms and new impairments. Plaintiff presented to Dr. Kucaba on November 17, 2011, complaining of worsening lower extremity pain. Tr. at 314. It was then that Dr. Kucaba noted positive Homan's sign and

suspected possible deep venous thrombosis, which was later ruled out.  Tr. at 314–15, 317.   Records after November 17, 2011, indicate new diagnoses and worsening symptoms.  Tr. at 281–84, 291, 292, 303–04, 310, 328–29, 332–33.

Plaintiff argues that because Dr. Kucaba's opinion was that of a treating physician, which carries controlling weight if well-supported, the Appeals Council erred in failing to find that it was new and material evidence that rendered the ALJ's decision contrary to the weight of the evidence.  [Entry #13 at 22].  Plaintiff compares Dr. Kucaba's opinion to the opinion of the physician discussed in *Meyer*, which was determined to be new and material evidence warranting remand.  *Id.*  The undersigned disagrees with Plaintiff and distinguishes this case from *Meyer* in that the doctor who rendered the opinion in *Meyer* performed the claimant's back surgery and treated him post-operatively prior to the date of the ALJ's decision, while Dr. Kucaba failed to treat Plaintiff before the date of the ALJ's decision.  662 F.3 at 705 n.1.  Plaintiff was not examined by Dr. Kucaba for the first time until nearly a month after the ALJ's decision was rendered.  Tr. at 319.  Unlike the physician in *Meyer*, Dr. Kucaba was not addressing the evidence that he observed prior to the date of the ALJ's decision in the opinions that he rendered on and after November 23, 2011.  Because he had no contact with Plaintiff before November 2011, none of his opinions was based on his observations of Plaintiff before the ALJ's decision on October 7, 2011.  Furthermore, Dr. Kucaba's treatment notes and opinions do not reference having reviewed any of Plaintiff's prior treatment notes for the period before the ALJ's decision.  A finding that Dr. Kucaba's opinion is not new and material evidence requiring remand is further supported by indications in Dr. Kucaba's letters that

23

Plaintiff's impairments were "worsening;" that he was "developing" new problems; and that his impairments were "starting to affect" other areas of his body, which suggest that Plaintiff's impairments worsened after the date of the ALJ's decision.  Tr. at 296, 312, 325.

The undersigned recommends a finding that ALJ's actions, findings, and conclusion were not contrary to the weight of the entire evidence, including that which was new and material.  New and material evidence included notes from PharmD Cardiovascular Risk Reduction Clinic dated August 10, 2011, and September 19, 2011, which indicated that Plaintiff was walking for two hours on two days per week and doing well.  Tr. at 340, 343.  On October 31, 2011, Plaintiff had recently started a diet and was continuing to exercise.  Plaintiff indicated no complaints during any of these three visits over a period of nearly three months.  Plaintiff did register complaints when he visited Dr. Kucaba for the first time on November 3, 2011, but Dr. Kucaba's objective findings were similar to those of physicians who had previously treated Plaintiff.  Tr. at 319–22. In light of the foregoing, the undersigned recommends a finding that the new and material evidence was not contrary to the weight of the evidence considered by the ALJ and that the ALJ's decision was supported by substantial evidence.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law.  Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

August 14, 2014                          Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).