IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Steve Booker, | ) | |
| | ) | Civil Action No. 1:13-cv-2033-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Steve Booker ("Booker"), brought this action pursuant to the Social Security Act ("SSA"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Now before this court is the magistrate judge's Report and Recommendation ("Report"), recommending the court to affirm the Commissioner's decision. (ECF No. 18).[1] In the Report, the magistrate judge sets forth the relevant facts and legal standards, which are incorporated herein by reference. Booker has filed objections to the Report (ECF No. 21), and the Commissioner has responded to those objections (ECF No. 22). Accordingly, this matter is now ripe for review.

_____

[1] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## BACKGROUND

Booker applied for DIB and SSI in March 2010, alleging disability beginning on December 19, 2008.[2]  Booker's application was denied initially and on reconsideration.  On August 12, 2011, an Administrative Law Judge ("ALJ") heard testimony from Booker and a vocational expert.  On October 7, 2011, the ALJ issued a decision denying Booker's claim.

In his decision, the ALJ found that Booker suffered from the following severe impairments: degenerative disc disease of the lumbar spine, obesity, diabetes mellitus, dyspnea on exertion, and venous insufficiency with peripheral edema.  (ECF No. 18 at 13).  The ALJ found that, despite Booker's limitations, jobs existed in significant numbers in the national economy that he could perform.  (ECF. No. 33 at 2-3).  Booker sought review of his case by the Appeals Council, and he also submitted a memorandum along with medical evidence that was not presented to the ALJ.  The Appeals Council denied Booker's request for review, making the ALJ's decision the final decision of the Commissioner.  This action followed.

## STANDARD OF REVIEW

The federal judiciary has a limited role in the administrative scheme established by the SSA.  Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance."  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).  Thus, in its review,

---

[2] Booker collected unemployment benefits for approximately two years until February 2010.  (ECF No. 11-2 at 20). To collect unemployment benefits, the claimant must be able and available to work.  *See* S.C. Code Ann. § 41-35-110 (2010).

2

the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## DISCUSSION

Booker objects to the magistrate judge's decision that the new information submitted to the Appeals Council after the ALJ decision was not material, and, thus irrelevant as to whether he was disabled before October 7, 2011. (ECF No. 21 at 1). Specifically, Booker contends that the magistrate judge improperly found that the medical testimony of Dr. Walter Kucaba was not "new evidence" because it does not concern the time period prior to the ALJ's decision.

Evidence submitted to the Appeals Council with a request for review must be considered in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc) (internal quotation marks and citation omitted). Evidence is new "if it is not duplicative or cumulative." *Id.* at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* "[P]ost-[ALJ decision] medical evidence generally is admissible in an SSA disability determination in such instances in which that evidence permits an inference of

linkage with the claimant's pre-[ALJ decision] condition." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012) (citation omitted). Nonetheless, evidence should not be given retrospective consideration where there is no support for the existence of impairments or the severity alleged prior to the date of the ALJ's decision. *See Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005) (per curiam). When a claimant seeks to present new evidence to the Appeals Council, he is not required to show good cause for failing to present the evidence earlier. *Id.* at 96 n.3; *cf.* 20 C.F.R. § 404.970(b). An examination of these cases decided by the Fourth Circuit is illustrative of these rules.

In *Wilkins*, the claimant injured her shoulder at work in 1981, and never returned to work. 953 F.2d at 94. Starting in 1981, the claimant began seeing Dr. Liu for depression, and continued seeing her through March 28, 1987. *Id.* In 1988, the ALJ decided her case, finding that she suffered from low back pain and major depression, and was unable to continue to perform her current job. *Id.* The ALJ awarded SSI to her, but not DIB because the ALJ found that she became disabled on March 28, 1987, after her date last insured on December 31, 1986. *Id.* On appeal to the Appeals Council, the claimant submitted a letter from Dr. Liu, which stated the claimant has "been very depressed" since 1981. *Id.* Moreover, Dr. Liu wrote that "[a]ccording to Mrs. Wilkins, from December 1986 until I saw her on March 28, 1997 both her mental and physical symptoms basically remained constant." *Id.* And finally, Dr. Liu stated: "[I]n my opinion, she was disabled as of at least December 31, 1986." *Id.* at 95. On this information, the Fourth Circuit held that the letter was new evidence that must be considered, and remanded the case. *Id.* at 95-96.

In *Barnhart*, six days after the ALJ hearing, the claimant submitted a "Physical Capacities Questionnaire and Assessment" by his primary treating physician. 434 F.3d at 655.

The ALJ allowed the assessment into evidence, but discredited it due to conflicting medical evidence. *Id.* The ALJ subsequently denied her claim of disability. *Id.* at 653-54. On appeal, the claimant argued that the ALJ failed to give proper weight to the assessment. *Id.* at 654. The Fourth Circuit, although addressing claimant's argument in a footnote, affirmed the decision on other grounds, specifically, that the assessment did not relate back to the claimant's date last insured. *Id.* at 655. The claimant's date last insured was June 30, 2001, and the ALJ's hearing was on March 20, 2002. *Id.* at 655-56. The Fourth Circuit stated that the "assessment was submitted almost nine months after Johnson's last insured date . . . [, and the claimant] has made no argument that the disabilities contained in the assessment existed continuously from June 30, 2001 to the present, and there is no objective medical evidence that the impairments observed by [the physician] in 2002 existed prior to June 30, 2001." *Id.* at 656.

In *Bird*, the claimant's date last insured was March 31, 2005. 699 F.3d at 339. He applied for disability benefits on December 19, 2006, due to post traumatic stress disorder ("PTSD") that he suffered from after returning from Vietnam in 1970. *Id.* at 339-40. In 2006, the Veterans Administration ("VA") found that he had a 100 percent disability rating for VA benefit purposes. *Id.* at 339. He then met with psychologists, and they determined he suffered from PTSD and had since he left the military. *Id.* at 339-40. The claimant and his wife testified that his PTSD caused problems in his personal and professional life prior to his date last insured. *Id.* at 339. The ALJ found that although the claimant suffered from PTSD prior to his date last insured, he had no medical testimony from before his date last insured that established the severity. *Id.* at 340. The issue in that case was whether the ALJ erred by not giving retrospective consideration to the medical evidence compiled after his date last insured. *Id.* The Fourth Circuit stated that "[m]edical evaluations made after a claimant's insured status has

expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." *Id.* (citation omitted). The court held that "retrospective consideration of evidence is appropriate when 'the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with his earlier symptoms." *Id.* at 341 (citations omitted). Applying that rule to the case, the Fourth Circuit held that the ALJ failed to give adequate consideration to the evidence because the VA rating decision summarized severe symptoms of PTSD prior to its decision, medical evidence indicated that his PTSD had been ongoing since Vietnam, and lay testimony about his livelihood buttressed the conclusion that his condition existed prior to his DLI. *Id.* at 341-42.

With this background in mind, it appears that the information Booker provided to the Appeals Council should be considered if there is linkage that relates the medical evidence to his condition before or on October 7, 2011. *See id.* at 341. If, however, the new information does not relate back to a time period prior to October 7th, the court should not remand the case. *See Barnhart*, 434 F.3d at 656.

Booker presented to the Appeals Council the following evidence: (1) medical records from Mary Black Healthcare dated February 24, 2012, to February 24, 2013; (2) a letter from Dr. Kucaba dated January 25, 2013; (3) medical records from St. Luke's Free Medical Clinic from August 10, 2011, to October 19, 2012; (4) medical records from Family Physicians (Dr. Kucaba) dated November 3, 2011, to September 27, 2012; (5) a letter from Dr. Kucaba dated September 27, 2012; and (6) a physical questionnaire completed by Dr. Kucaba on November 23, 2011. *See* (ECF No. 12).

In his appeal to the Appeals Council, Booker attempted to use this evidence to show that

he was disabled.  The Appeals Council, although using an erroneous date,[3] concluded that the new information did not provide a basis for changing the ALJ decision.  (ECF No. 11 at 2).  The Appeals Council stated that this "new information" was about a later time and thus did not impact the decision.  (ECF No. 11 at 2).  Accordingly, the Appeals Council denied review. (ECF No. 11 at 1-4).  The magistrate judge determined that the new information, except the medical notes from August 10, 2011, and September 19, 2011,[4] that Booker sought to introduce was not material because it does not relate to Booker's condition prior to the ALJ's decision.  (ECF No. 18 at 22-23).  The court agrees.

Because Booker has only argued that the ALJ should consider Dr. Kucaba's opinion on November 23, 2011, the court will limit its inquiry to the facts surrounding that information only.[5]  Prior to the ALJ decision, on August 10, 2011, Booker went to PharmD Cardiovascular Risk Reduction Clinic, and indicated that he was exercising approximately two hours, two days a week.  (ECF No. 12-3 at 65).  The medical professional encouraged him to increase the frequency of exercise, but not to walk as long when he does exercise.  (ECF No. 12-3 at 66).  On September 19, 2011, Booker returned to PharmD for a follow up appointment, and stated that he was exercising about an hour every other day.  (ECF No. 12-3 at 62).  Booker also said he was doing well.  (ECF No. 12-3 at 62).   A follow up appointment was scheduled for October 31, 2011.  (ECF No. 12-3 at 63).  After the ALJ decision, Booker returned for his follow up

---

[3] In its denial to review Booker's case, the Appeals Council stated that the ALJ decided the case through December 31, 2011.  (ECF No. 13 at 13).  The magistrate judge acknowledged that the December 31, 2011 date is erroneous, but determined that the error was harmless because if the Appeal Council said that the information was late by December 31, 2011, surely it would be late for October 7, 2011.  (ECF No. 18 at 21).  The court agrees with the magistrate judge.

[4] Because the medical opinions in the notes were given prior to the ALJ decision, they related to Booker's condition prior to the ALJ decision.

[5] He properly limits his inquiry to this opinion because the vocational expert testified that if Booker had to keep his legs elevated, there would not be any jobs available in the national market, and, thus, Booker would be disabled.  (ECF No. 18 at 12-13).  Dr. Kucaba's November 23, 2011 opinion states that Booker needs to keep his legs elevated.  (ECF No. 12-3 at 33).

appointment on October 31, 2011. (ECF No. 12-3 at 59). At that meeting, he indicated that he had just started a diet and was continuing to exercise. (ECF No. 12-3 at 59). Thereafter, on November 3, 2011, Booker met with Dr. Kucaba for the first time. (ECF No. 12-3 at 40-46). Dr. Kucaba recommended Booker to diet, exercise, and join a local gym. (ECF No. 12-3 at 44). Booker met with Dr. Kucaba again on November 17, 2011, because of "worsening right lower extremity pain and increased swelling." (ECF No. 13 at 9); *see also* (ECF No. 12-3 at 36-38). Booker returned to Dr. Kucaba on November 23, 2011, to have paperwork completed for his disability claim. (ECF No. 12-3 at 34). At this meeting, Dr. Kucaba reevaluated Booker on November 23, 2011, again for "worsening issues with pain in his lower back and bilateral knees." (ECF No. 13 at 10); *see also* (ECF No. 12-3 at 32-35). Dr. Kucaba instructed Booker that he needed to keep his legs elevated when sitting. (ECF No. 12-3 at 33). Dr. Kucaba also stated that Booker's condition will continue worsening if he does not take an active role in his health. (ECF No. 12-3 at 34). Dr. Kucaba made no findings connecting Booker's current condition on November 23, 2011, to his condition before the ALJ decision. (ECF No. 18 at 23).[6]

The issue for Booker is that Dr. Kucaba made no determination that Booker needed to keep his legs elevated during the relevant time period. *Compare Wilkins*, 953 F.2d at 95 (letter from physician explicitly stated that claimant was disabled during the time period in question); *with Barnhart*, 434 F.3d at 656 (the medical evidence did not relate back to the claimant's date last insured). Instead, Dr. Kucaba's opinion indicates worsening conditions of Booker. Booker acknowledges that he saw Dr. Kucaba for worsening conditions. (ECF No. 13 at 9; ECF No. 21 at 5). When Dr. Kucaba first saw Booker he recommended him to exercise by walking or riding

---

[6] Throughout 2012, Booker continued to see doctors for worsening symptoms. (ECF No. 13 at 12). On August 21, 2012, Dr. Kucaba stated again that Booker was having worsening conditions. (ECF No. 12-3 at 25-26). Finally on September 27, 2012, Dr. Kucaba provided a statement saying that: "This patient will have significant issues as far as trying to work *at this time*. This patient is disabled." (ECF No. 12-3 at 18) (emphasis added).

a bike, and noted that Booker was in "fair health." (ECF Nos. 13 at 9; 12-3 at 41, 44). Booker also stated on October 31, 2011, that he was continuing to exercise. (ECF No. 18 at 6). In his notes from his meeting with Booker on November 17, 2011, Dr. Kucaba stated that "patient presents to the clinic with worsening issues of the lower extremity pain." (ECF No. 12-3 at 36). During the November 23, 2011 meeting, Dr. Kucaba noted that Booker had worsening pain, and it was then that he needed to keep his legs elevated when sitting. (ECF No. 12-3 at 32-33). It appears that, and unfortunately for Booker, his health with regressing quickly. Within a three week span in November 2011, Dr. Kucaba went from recommending that Booker join a gym and use a bike and walk to recommending that he sit with his feet elevated. Because of the evidence of worsening change, the evidence of his condition in late November 2011 does not "permit[] an inference of [any] linkage with" his condition prior to October 7th. *Bird*, 699 F.3d at 341. Accordingly, because none of the information relates back to a condition that existed prior to the ALJ's decision, this information is not "new and material." *See* 20 C.F.R. § 404.970 ("The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it *relates to the period on or before the date of the administrative law judge hearing decision*." (emphasis added)); *see also Bishop v. Astrue*, 2012 WL 951775, at *4 (D.S.C. 2012) ("As nothing in [the physician's opinion] addresses whether or not Plaintiff was disabled during the relevant time period . . . , this new evidence is not material.").

Booker argues that the court should give retrospective application to Dr. Kucaba's opinion because Booker testified during the hearing that he had to elevate his legs. (ECF No. 21 at 3-4). He contends that utilizing the rules from *Byrd* and *Dotson v. Schweiker*, 719 F.2d 80 (4th Cir. 1983), the court must look forward from Booker's statement and look back from Dr.

Kucaba's statement.  (ECF No. 21 at 4).[7]

The court also does not believe that *Bird* is determinative of Booker's case.  Unlike in *Bird* where there was no medical evidence prior to the claimant's date last insured, 699 F.3d at 339, here, the record before the ALJ included medical testimony, none of which indicated that Booker needed to keep his legs elevated.  Similarly different is that the medical evidence in *Bird* stated that the PTSD had existed since the claimant's return from Vietnam, *id.* at 339-40, while here, the medical evidence discussed worsening conditions and did not relate back to the relevant time period.  The only similarity is that Booker provided lay testimony indicating he had to keep his legs elevated. In *Bird*, the claimant and the wife testified about the impact the PTSD had on both his work and personal life, and there was no contradictory medical evidence.  *Id.* at 342.  Booker's lay statement was not supported by any of the medical evidence introduced at the hearing.  Moreover, none of the new medical information supports his opinion that he needed to keep his legs elevated prior to the ALJ decision.  Accordingly, his lay opinion is not buttressed by the medical evidence, and does not provide the linkage needed between the evidence.  *See id.* at 341-42.

Booker also relies extensively on *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), to support his argument that the court must remand the case.  *See* (ECF No. 21 at 1, 6, 11, 12); (ECF No. 13 at 17, 20, 22, 23); (ECF No. 15 at 1, 3, 7, 10, 11).  He argues that *Meyer* stands for the proposition that: "Where new evidence is submitted to the Appeals Council that is

---

[7] In *Dotson*, the court stated that "a condition, once proved to exist is presumed to continue to exist."  Booker argues that since we presume a condition exists once it is determined to exist, it is "logically absurd to apply the rule in one direction but not the other." (ECF No. 15 at 3-4).  The court finds the argument illogical and *Dotson* irrelevant.  In *Dotson*, the claimant applied for and was awarded disability benefits in 1974.  719 F.2d at 81.  In 1981, the Secretary terminated benefits.  *Id.*  The issue before the Fourth Circuit was whether the burden before the ALJ was on the Secretary or the claimant.  *Id.*  The court held that a presumption of disability arises once the Secretary made its initial determination to award benefits.  *Id.* at 82.  Here, Booker was never previously awarded disability benefits.  Therefore, *Dotson* and the rule concerning the burden of proof in such an instance is irrelevant to the issue in this case.

sufficiently material that it *might* have affected the Commissioner's final decision, the *Meyer* case requires that the case be remanded so the evidence can be weighed." (ECF No. 21 at 1). The *Meyer* Court expressly stated that for new information to be material, there must be "'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer*, 662 F.3d at 705 (quoting *Wilkins*, 953 F.2d at 96). "Might" is far short of the "reasonable possibility" standard this court must apply.[8]

In *Meyer*, the ALJ denied the disability claim, and stated that the claimant had failed to provide an opinion from his treating physician. 662 F.3d at 701-02. When the claimant sought review in the Appeal Council, he submitted a letter from his treating physician. *Id.* at 703-04. The Appeals Council made the letter part of the record, but stated it did not change the outcome. *Id.* The Commissioner in *Meyer*, unlike here, conceded that the letter constituted new and material evidence. *Id.* at 705. The Fourth Circuit remanded the case because the evidence was not so one sided that fact finding needed to be performed to determine whether the claimant was disabled in light of the letter. *Id.* at 707. Unlike in *Meyer*, here the Commissioner has not conceded that the new information is "new evidence." Instead, the Commissioner has properly argued that the information is not "new evidence" because it does not relate back to a condition that existed before the ALJ's decision.

In sum, the court finds that the medical evidence by Dr. Kucaba is not new and material because it does not relate back to the time period prior to the ALJ decision. Rather, the evidence shows that Booker's condition worsened after the ALJ decision, defeating any link between pre- and post-ALJ decision evidence.

**CONCLUSION**

---

[8] It appears that Booker admits that the correct standard is "reasonable possibility," not the "might" standard. *See* (ECF No. 21 at 5, 12).

11

After carefully reviewing the record, the court finds that the ALJ, in reviewing the medical history and subjective testimony, conducted a thorough and detailed review of Booker's impairments, arguments, and functional capacity.  Likewise, the magistrate judge considered each of Booker's arguments and properly addressed each in turn, finding them without merit.  Having conducted the required de novo review of the issues to which Booker has objected, the court finds no basis for disturbing the Report.  Accordingly, the court adopts the Report and its recommended disposition.  Therefore, for the reasons set out above and in the Report, the Commissioner's final decision is **AFFIRMED.**

      **IT IS SO ORDERED.**

                                      s/Timothy M. Cain
                                      United States District Judge

Anderson, South Carolina
December 4, 2014