IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Steve Booker, | ) | |
| | ) | Civil Action No. 1:13-2033-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Steve Booker ("Booker") has filed a motion to reconsider the court's December 4, 2014 order pursuant to Fed. R. Civ. P. 59. (ECF No. 27). The court may grant relief under Rule 59(e): "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l. Fire Ins. Co.*, 148 F.3d 396, at 403 (4th Cir. 1998). Accordingly, a movant must show more than "mere disagreement" with the court's order to succeed on a Rule 59(e) motion. *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993). In addition, a movant may not use a Rule 59(e) motion to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2810.1 (3d ed.).

Booker asserts that this court made a "clear error of law" or "manifest errors of fact." (ECF No. 27 at 1). He specifically contends that the court overlooked evidence that may have shown that Dr. Walter Kucaba's November 23, 2011 opinion related back to a condition that pre-dated the ALJ's October 7, 2011 decision. (ECF No. 27, 32). The court disagrees.

1

Booker argues that his obesity remained constant and that is what caused him to be disabled. (ECF 32 at 4). Booker attempts to analogize his obesity to the claimant's post-traumatic stress disorder ("PTSD") in *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012). However, the claimant's PTSD in *Bird* was his disabling impairment and was constant. *Id.* at 342-43. Here, Dr. Kucaba indicated that Booker's obesity, though constant,[1] was causing his impairments to worsen, and it was the worsening impairments that led to Dr. Kucaba recommending Booker to keep his legs elevated. (ECF No. 12-3 at 73). In addition to that difference, there are other striking differences between the claimant in *Bird* and Booker.

In *Bird*, the claimant's date last insured ("DLI") was March 31, 2005. *Id.* at 339. The Fourth Circuit held that the ALJ failed to give weight to a June 2006 VA rating decision, a July 2007 report by Dr. Cole, and a September 2007 psychological examination. *Id.* at 341-43. The VA rating decision stated that the claimant "suffered from severe symptoms of PTSD" before the date that the rating decision became effective. *Id.* at 341. The Cole Report recounted the claimant's "impairments and their impact" to him prior to his DLI. *Id.* at 342. The September 2007 psychological examination indicated that the claimant's "symptoms of PTSD had been ongoing since his return from military service in Vietnam." *Id.* Therefore, in *Bird*, all the medical opinions related back to the relevant time period, creating a linkage between the claimant's pre-DLI condition. That linkage also buttressed the testimony of the claimant and his wife. *Id.* at 342. In addition, in *Bird*, the claimant did not have "any medical records dating before his DLI." *Id.* at 339.

---

[1] Historically, Booker's obesity never prevented him from working, and when he met with Dr. Kucaba, he weighed over 100 pounds less than he weighed when he was working. *Compare* (ECF No. 11-7 at 13) (indicating that he weighed over 500 pounds for many years while he was working); *with* (ECF No. 12-3 at 33) (stating that Booker weighed 382 pounds on November 23, 2011).

In this case, Dr. Kucaba did not state that Booker needed to elevate his legs prior to November 23, 2011, nor did he recount Booker's historical condition. On November 3, 2011, Dr. Kucaba indicated that Booker had swelling in the lower extremities and "some venous stasis changes [were] beginning." (ECF No. 12-3 at 42). As Booker acknowledged in his motion to reconsider, on November 17, 2011, Dr. Kucaba indicated that Booker's condition had worsened. (ECF No. 27 at 6-7). Booker reported worsening conditions again to Dr. Kucaba on November 23, 2011. (ECF No. 12-3 at 32). Therefore, Dr. Kucaba did not state that Booker needed to keep his legs elevated when he sits until after Booker's condition had worsened.[2]

Moreover, because Dr. Kucaba did not indicate that Booker needed to keep his legs elevated prior to November 23, 2011, the new information does not "buttress" Booker's testimony. Booker claims that because he testified he had to keep his legs elevated, he must have needed to keep his legs elevated during the relevant time period. This is erroneous. No medical professional, not even Dr. Kucaba, has stated that Booker needed to elevate his legs at any relevant time.

In addition, unlike the claimant in *Bird*, Booker had extensive medical records prior to the ALJ decision, none of which indicated that he had to keep his legs elevated. He met with Dr. Larry R. Korn on May 5, 2010, for a consultive examination, and Dr. Korn examined his lower extremities, acknowledging that Booker had 4+ mm pitting pretibial edema. (ECF No. 18 at 2). On May 5, 2010, Booker was also x-rayed. (ECF No. 18 at 3). On June 1, 2010, state agency

---

[2] Booker argues that there is no indication of how severely his condition had worsened. (ECF No. 27 at 7). As the court stated in its order, Dr. Kucaba recommended that Booker join a gym and use a bike and walk when he first started treating Booker. (ECF No. 25 at 9). On August 10, 2011, Booker indicated that he was walking about two hours, two days a week. (ECF No. 12-3 at 65-66). On September 19, 2011, he stated that he was exercising about one hour every other day. (ECF No. 12-3 at 62). On October 31, 2011, Booker said that he was exercising about an hour every other day. (ECF No. 12-3 at 59). The extent of the severity of the worsened condition is evidenced by the fact that on November 23, 2011, Dr. Kucaba stated that Booker's condition had worsened such that he could only stand or walk around for fifteen minutes before needing to sit down, and that he could only walk four city blocks without rest or severe pain. (ECF No. 12-3 at 72).

consultant Dr. Maria M. Legarda completed Booker's physical residual functional capacity assessment. (ECF No. 18 at 3). Booker underwent pulmonary function testing on September 27, 2010. (ECF No. 18 at 4). On November 8, 2010, state agency consultant Dr. Barbara Cochran completed a physical residual functional capacity assessment on Booker. (ECF No. 18 at 4). On March 29, 2011, Booker went to the emergency department at Mary Black Healthcare. (ECF No. 18 at 4). He returned to the emergency department at Mary Black Healthcare on April 11, 2011. (ECF No. 18 at 4). On May 20, 2011, Booker established primary care treatment with Judy Thomas, a nurse practitioner. (ECF No. 18 at 5). She observed Booker's edema. (ECF No. 18 at 5). Booker followed up with Ms. Thomas on June 13, 2011, and she observed 1+ pitting edema in Booker's feet and lower extremities. (ECF No. 18 at 5). Booker met with Dr. Louis L. Martin on June 22, 2011, for a diabetic eye examination. (ECF No. 18 at 5). On July 11, 2011, Booker presented himself to the PharmD Cardiovascular Risk Reduction Clinic ("PharmD"). (ECF No. 18 at 5). He followed up at PharmD on August 10, 2011, and September 19, 2011. (ECF No. 18 at 6). Because of Booker's frequent visits with medical personnel and the fact that none of them indicated that Booker needed to keep his legs elevated shows that Booker's condition had not worsened to that point during the relevant time period. Indeed, Ms. Thomas, who observed Booker's edema on two previous occasions, saw Booker on October 31, 2011, and she did not state that his condition was such that he needed to elevate his legs.[3]

---

[3] In his objections, Booker asserted that it is a reasonable possibility that Ms. Thomas did not observe Booker's legs at all on October 31, 2011. (ECF No. 21 at 7). He claims that is because on page 336 of the record, Ms. Thomas did not check a box on a form next to a line designated "LE Edema." (ECF No. 21 at 7). A review of this document as well as the entire record reflects this category was one of several not specifically checked on that and other visits, including categories for "Lung Sounds" and "Heart Sounds." The record of this visit indicates that Ms. Thomas reviewed Booker's records from previous visits, took a history of symptoms and complaints, reviewed laboratory results and medications, conducted a medical assessment, and recommended a treatment plan. (ECF No. 12-3 at 59-60).

Last, Booker states that other treating physicians indicated that Booker had an edema prior to the ALJ decision. (ECF No. 27 at 3-4). However, none of these treating physicians stated that Booker needed to keep his legs elevated. Instead, no medical professional said that Booker had to keep his legs elevated until he presented disability paperwork to his new treating physician 47 days after the ALJ decision and after his condition had worsened.[4]

In sum, because Dr. Kucaba failed to indicate that a condition, he himself admitted was worsening, related back to October 7, 2011, the court declines to grant the motion for reconsideration. Therefore, after a thorough review of the record and relevant issues in this case, the court finds that Booker has not stated adequate grounds under Rule 59(e) and, thus, his motion to alter or amend judgment (ECF No. 27) is **DENIED.**

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

March 6, 2015
Anderson, South Carolina

---

[4] Another medical professional did not state that Booker needed to keep his legs elevated until July 2012. (ECF Nos. 17 at 4; 12-3 at 51).